## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

ARTURO HERNANDEZ-        :
ESQUIVEL,                :
    Movant,              :
                         :        **CIVIL ACT. NO.: 18-235-WS-N**
vs.                      :        **CRIMINAL NO. 17-0037-WS-N**
                         :
UNITED STATES OF AMERICA,  :
    Respondent.          :
                         :

## REPORT AND RECOMMENDATIONS

Arturo Hernandez-Esquivel ("Hernandez" or "Petitioner"), a federal prisoner proceeding *pro se*, has filed a Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Doc. 46)[1]. The Court has referred the petition to the undersigned Magistrate Judge who, under S.D. Ala. GenLR 72(a)(1) and (2)(R), is authorized to require responses, issue orders to show cause and any other orders necessary to develop a complete record, and to prepare a report and recommendation to the District Judge as to appropriate disposition of these proceedings brought under 28 U.S.C. § 2255, in accordance with 28 U.S.C. § 636(b)(1) and Rules 8(b) and 10 of the Rules Governing Section 2255 Proceedings for the United States District Courts. *See* S.D. Ala. GenLR 72(b); (4/20/2018 electronic referral).

The United States has timely filed a response (Doc. 50) in opposition to Hernandez's § 2255 motion, to which Hernandez has not responded. The motion is

---

[1] All "Doc." citations herein refer to the docket of the above-styled criminal action.

now under submission for determination of whether expansion of the record and/or an evidentiary hearing is warranted. *See* Rules 7 and 8(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts.

Having reviewed the parties' submissions in accordance with Rule 8(a) of the Rules Governing Section 2255 Proceedings, the undersigned finds that neither expansion of the record nor an evidentiary hearing is not warranted and **RECOMMENDS** that Hernandez's § 2255 motion (Doc. 46) be **DISMISSED** with prejudice.

## I.      Background

In May 2017, Hernandez pled guilty to one count of possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1). (Docs. 36, 37). During the guilty plea hearing, Hernandez was placed under oath and questioned regarding the voluntariness of his plea:

> The Court:          Mr. Esquivel, do you understand the charge against you?
>
> The Defendant:    Yes.
>
> The Court:          Are you fully satisfied with the representation you've received from your attorney in this case, and have you fully discussed with your attorney all of the facts surrounding the charge?
>
> The Defendant:    Yes.
>
> . . .
>
> The Court:          Have there been any promises made to you by anyone or has anyone attempted in any way to force you to plead guilty or to pressure you or threaten you in any way?
>
> The Defendant:    No.

[Defense Counsel]: Your Honor, with regard to the plea agreement and the promises that are being made, the plea agreement indicates that they will recommend dismissal of the case in Atlanta. I did receive confirmation from [the Government] subsequent to receiving the plea agreement that Atlanta has agreed to dismiss the Atlanta charge in return for his plea here today.

...

The Court: All right. Mr. Hernandez, the penalties that could be imposed if convicted of Count One of the indictment are outlined in your plea agreement.

If convicted of that count, you could receive a term of imprisonment of no less than ten years, up to life . . . Do you understand that?

The Defendant: Yes. I do understand. . .

The Court: Also, if the sentence is more severe than you expected or if I do not accept the sentencing recommendation in your plea agreement, you'll still be bound by your plea. Even if you do not like the sentence imposed by the Court, you will not be able to withdraw your plea. The time to make that decision is now.

Do you understand that?

The Defendant: Yes. I understand.

The Court: Under some circumstances, you and the United States each may have the right to appeal any sentence the judge imposes. You also have the right to waive your right to appeal. And I see by your plea agreement that you are waiving your right to appeal any - - you're waiving your right to appeal your conviction and sentence with very limited exceptions. That would be any punishment in excess of the statutory maximum, any punishment constituting an upward departure of the guideline range, and any claim of ineffective assistance of counsel.

Do you understand that?

The Defendant: Yes.

(Doc. 48 at 4-9). A sentencing hearing was held on August 15, 2017, where it was

determined that U.S.S.G. § 5K1.1 was applicable to Hernandez for his substantial

cooperation, and Hernandez was sentenced to 70 months in the custody of the Bureau of Prisons. (Docs. 43, 49 at 6). Hernandez also executed a Notice of Non-Appeal the same day. (Doc. 42).

On May 15, 2018, Hernandez timely filed the instant § 2255 petition raising four claims of ineffective assistance of counsel. (Docs. 46). In the United States' response in opposition, the Government argues that the claims are barred by Hernandez's valid plea waiver or are otherwise without merit. (Doc. 50).

## II. Applicable Law

### A. General Standards in § 2255 Proceedings

Title 28 U.S.C. § 2255 "permits a federal prisoner to bring a collateral challenge by moving the sentencing court to vacate, set aside, or correct the sentence." *Winthrop-Redin v. United States*, 767 F.3d 1210, 1215-16 (11th Cir. 2014). Specifically, § 2255 provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence ... If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

28 U.S.C. § 2255(a)-(b).

"Once the defendant's chance to appeal has been waived or exhausted," a court is "entitled to presume he stands fairly and finally convicted, especially when, as here, he already has had a fair opportunity to present his federal claims to a federal forum." *United States v. Frady*, 456 U.S. 152, 164, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982). "[A] collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct appeal." *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (per curiam) (citing *Frady*, 456 U.S. at 165 (collecting cases)). "Because collateral review is not a substitute for a direct appeal, the general rules have developed that: (1) a defendant must assert all available claims on direct appeal, and (2) relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." *Id.* at 1232 (internal citations, quotations, and footnote omitted).

> Under the procedural default rule, a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding. *McCoy v. United States*, 266 F.3d 1245, 1258 (11th Cir. 2001); *Jones v. United States*, 153 F.3d 1305, 1307 (11th Cir. 1998); *Mills[ v. United States]*, 36 F.3d [1052,] 1055[ (11th Cir. 1994)]; *Greene v. United States*, 880 F.2d 1299, 1305 (11th Cir. 1989). This rule generally applies to all claims, including constitutional claims. *See Reed v. Farley*, 512 U.S. 339, 354, 114 S. Ct. 2291, 2300, 129 L. Ed. 2d 277 (1994) ("Where the petitioner—whether a state or federal prisoner—failed properly to raise his claim on direct review, the writ is available only if the petitioner establishes cause for the waiver and shows actual prejudice resulting from the alleged violation." (internal quotation marks, punctuation, and citations omitted)); *see also Wainwright v. Sykes*, 433 U.S. 72, 84, 97 S. Ct. 2497, 2505, 53 L. Ed. 2d 594 (1977) (applying cause and prejudice standard to constitutional claims).

A defendant can avoid a procedural bar only by establishing one of the two exceptions to the procedural default rule. Under the first exception, a defendant must show cause for not raising the claim of error on direct appeal *and* actual prejudice from the alleged error. *Bousley v. United States*, 523 U.S. 614, 622, 118 S. Ct. 1604, 1611, 140 L. Ed. 2d 828 (1998); *Mills*, 36 F.3d at 1055; *Cross v. United States*, 893 F.2d 1287, 1289 (11th Cir. 1990); *Greene*, 880 F.2d at 1305; *Martorana v. United States*, 873 F.2d 283, 284 (11th Cir. 1989); *Parks v. United States*, 832 F.2d 1244, 1246 (11th Cir. 1987). Under the second exception, a court may allow a defendant to proceed with a § 2255 motion despite his failure to show cause for procedural default if "'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *Mills*, 36 F.3d at 1055 (quoting *Murray v. Carrier*, 477 U.S. 478, 496, 106 S. Ct. 2639, 2649, 91 L. Ed. 2d 397 (1986)); *see also Bousley*, 523 U.S. at 622, 118 S. Ct. at 1611; *Jones*, 153 F.3d at 1307.

*Id.* at 234-35 (footnote omitted).

Once a petitioner files a § 2255 motion, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall ... grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." [28 U.S.C.] § 2255(b). A petitioner is entitled to an evidentiary hearing if he "alleges facts that, if true, would entitle him to relief." *Aron[ v. United States*], 291 F.3d [708,] 715[ (11th Cir. 2002)] (quoting *Holmes v. United States*, 876 F.2d 1545, 1552 (11th Cir. 1989)). "[A] petitioner need only *allege*—not prove—reasonably specific, non-conclusory facts that, if true, would entitle him to relief." *Id.* at 715 n.6. However, a district court need not hold a hearing if the allegations are "patently frivolous," "based upon unsupported generalizations," or "affirmatively contradicted by the record." *Holmes*, 876 F.2d at 1553 (quoting *United States v. Guerra*, 588 F.2d 519, 520-21 (5th Cir. 1979)); *see, e.g., Lynn v. United States*, 365 F.3d 1225, 1239 (11th Cir. 2004) ("Because the ... affidavits submitted by Lynn amount to nothing more than mere conclusory allegations, the district court was not required to hold an evidentiary hearing on the issues and correctly denied Lynn's § 2255 motion.").

*Winthrop-Redin*, 767 F.3d at 1216 (footnote omitted). *Accord, e.g., Diveroli v. United States*, 803 F.3d 1258, 1263 (11th Cir. 2015).

## B.     Ineffective Assistance of Counsel

The Sixth Amendment gives criminal defendants the right to effective assistance of counsel. U.S. Const., amend. VI; *Strickland v. Washington*, 466 U.S. 668, 684-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  "To establish an ineffective assistance of counsel claim, a defendant must show that (1) 'counsel's representation fell below an objective standard of reasonableness' and (2) that such failure prejudiced him in that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *United States v. Pease*, 240 F.3d 938, 941 (11th Cir. 2001) (per curiam) (quoting *Strickland*, 466 U.S. at 687-88, 694). "'Conclusory allegations of ineffective assistance are insufficient.'" *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992) (per curiam) (quoting *United States v. Lawson*, 947 F.2d 849, 853 (7th Cir. 1991)). Moreover, "[b]ecause both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa." *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) (citation omitted).  *See also Osley v. United States*, 751 F.3d 1214, 1222 (11th Cir. 2014) ("A habeas petitioner claiming ineffective assistance of counsel must carry his burden on both *Strickland* prongs, and a court need not address both prongs if the defendant has made an insufficient showing on one."); *Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001) ("The petitioner bears the burden of proof on the 'performance' prong as well as the 'prejudice' prong of a *Strickland* claim, and both prongs must be proved to prevail.  The *Strickland* test

is not easily met; as we have said, 'the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.[]'" (quoting *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (citation omitted))).

"The test for ineffectiveness is not whether counsel could have done more; perfection is not required." *Waters v. Thomas*, 46 F.3d 1506, 1518 (11th Cir. 1995) (en banc). "A lawyer can almost always do something more in every case. But the Constitution requires a good deal less than maximum performance." *Atkins v. Singletary*, 965 F.2d 952, 960 (11th Cir. 1992). *Accord, e.g., Burt v. Titlow*, 571 U.S. 12, 134 S. Ct. 10, 18, 187 L. Ed. 2d 348 (2013) ("[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance...").

### III.  Analysis

Hernandez raises four claims of ineffective assistance of counsel, three claims regard counsel's performance prior to the entry of plea and one claim regards post sentencing performance. (Doc. 46). The record confirms, Hernandez did not file a direct appeal of his convictions; ordinarily, if an available substantive claim is not advanced on direct appeal, it is deemed procedurally barred in a § 2255 proceeding. *See Mills v. United States*, 36 F.3d 1052, 1055-56 (11th Cir.1994); *Greene v. United States*, 880 F.2d 1299, 1305 (11th Cir.1989). However, a claim that would normally be procedurally barred due to the failure to raise it on appeal may be presented in a § 2255 motion when couched as a claim of ineffective assistance of counsel. *See*

*Massaro v. United States*, 538 U.S. 500, 504, 123 S. Ct. 1690, 155 L. Ed. 2d 714 (2003).[2] Moreover, ineffective assistance of counsel may constitute "cause" excusing a procedural default, *see Greene*, 880 F.2d at 1305, but only if the claim of ineffective assistance is meritorious. *Id.* This involves a determination of the merits of the underlying substantive claim. *See United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000) (to determine whether a claim of ineffective assistance of counsel has merit, court must determine whether claims counsel failed to raise were meritorious).

## A.    Counsel's failure to file a notice of appeal

Hernandez constructs claim one of his petition as an ineffective assistance of counsel claim based on counsel's failure to file a notice of appeal; however, a thorough reading of the allegations reveals an attempt to challenge the length of his sentence and voluntariness of his plea. Specifically, he states:

> Petitioner instructed his defense counsel during the sentence hearing but he adviced[sic] him to desist on it, because "they will give you a long sentence". Spite, his lawyer's advice, petitioner continued with his wishes to appeal and again, his lawyer outside the courtroom, insisted to desist in the petitioner's wishes, and pressed him to sign to reject the appeal, because "they will give you a new long sentence".

> Defense counsel frightened and pressed his defendant to sign the document where he resigned his right to appeal. He violated the petitioner's right to appeal, Sixth Amendment of the United States Constitution.

---

[2]    "In most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance." *Massaro v. United States*, 538 U.S. 500, 504, 123 S. Ct. 1690, 155 L. Ed. 2d 714 (2003).n *See also United States v. Curbelo*, 726 F.3d 1260, 1267 (11th Cir. 2013) ("An ineffective assistance claim should usually be raised in a motion under 28 U.S.C. § 2255." (citing *United States v. Patterson*, 595 F.3d 1324, 1328 (11th Cir. 2010))), *cert. denied*, 571 U.S. 1150, 134 S. Ct. 962, 187 L. Ed. 2d 822 (2014).

> Additional, Defense counsel unprofessional error and advice, let that Petitioner waived his right in some different stage of the court proceedings. Due to his lawyer advice, the guilty plea was not voluntary because his lawyer advice, because they promised him less than 5 years. During the plea guilty at the court, petitioner only followed the instructions of his lawyer, asking the questions of the Judge according with the legal advice of his lawyer.

(Doc. 46-1 at 2). In the petition, Hernandez acknowledges that he waived the right to challenge the length of his sentence by acceptance of the Plea Agreement. However, he claims the plea was involuntary due to counsel's ineffective assistance – namely, that counsel promised him a prison sentence of 5 years (60 months) in exchange for his plea of guilty, but a sentence of 70 months imprisonment and 5 years of supervised release was imposed.[3] Hernandez further claims his counsel rendered ineffective assistance by failing to file a notice of appeal. The Court finds both arguments meritless and will discuss in turn.

Hernandez seeks to avoid his guilty plea and plea agreement by alleging that his plea was not knowing and voluntary because his counsel promised him a sentence of less than five years. This claim is belied by the record. The plea hearing transcript reflects that the district court accepting the plea specifically addressed, with the assistance of an interpreter, that Hernandez: (1) entered the plea free from coercion, (2) understood the nature of the charges, and (3) understood the consequences of his

---

[3]     Approximately one month prior to the filing this petition, Hernandez submitted a letter to this Court "requesting the right sentence that Honorable Judge have me on August 15, 2017." (Doc. 45 at 1). Hernandez states in his letter that at the sentencing hearing, "I heard that my sentence was five years (60 months), but the computation data sheet that my case manager gave me in past days reflected 70 months. I would like to know, what is the mistake with my release date, please." (*Id.*).

plea. *United States v. Moriarty*, 429 F.3d 1012, 1019 (11th Cir. 2005) (per curium). To reverse the plea after a conviction, Hernandez "must show a reasonable probability that, but for the error [under Rule 11 of the court accepting the guilty plea], he would not have entered the plea." *Id.* at 1020 (internal citation omitted). Furthermore, there is a strong presumption that the statements made during the plea colloquy are true, *United states v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994), and Hernandez bears the "heavy burden" of showing that his statements were under oath were false. *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988). The record clearly evidences that Hernandez was informed that he faced a sentence of 10 years to life imprisonment for the charges against him. This potential sentence was explained in the Presentence Investigation Report, in the executed Plea Agreement, and was explained in the open court plea colloquy. (*See* Docs. 36 at 4; 38 at 1; 48 at 6).

Second, even if the record could support that counsel misinformed Hernandez about the length of his sentence, his claim would still fail. Here, Hernandez must show that there is a reasonable probability that, but for counsel's mistakes, he would not have pleaded guilty and would have insisted on going to trial, *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985), and Hernandez's petition is void of such a claim or suggestion of such. Instead, the record reflects that Hernandez testified under oath at the plea hearing that he was fully satisfied with his attorney's representation, and that his attorney had fully explained to him the contents of the plea agreement. Hernandez further testified that he understood the charges he faced

carried an imposed minimum sentence of 10 years to life. (*See* Doc. 48). The law is clear, "a defendant's reliance on an attorney's mistaken impression about the length of his sentence is insufficient to render a plea involuntary as long as the court informed the defendant of his maximum possible sentence." *United States v. Bradley*, 905 F.2d 359, 360 (11th Cir. 1990); *United States v. Wilson*, 245 F. App'x 10 (11th Cir. 2007) (even if counsel was deficient in advising defendant of possible sentencing implications of guilty plea, no prejudice can be established where district court cured any error by explaining consequences in detail before accepting the guilty plea). Accordingly, the Court finds Hernandez's plea was voluntary, and he fully understood the potential sentence he faced, and he may not attack the sentence through the back door of claiming ineffective assistance.

As to counsel's failure to file a notice of appeal, it is well settled in the Eleventh Circuit "that an attorney who fails to file an appeal on behalf of a client who specifically requests it acts in a professionally unreasonable manner *per se*." *Thompson v. United States*, 504 F. 3d 1203, 1206 (11th Cir. 2007) (citing *Gomez-Diaz v. United States*, 433 F.3d 788, 792 (11th Cir. 2005)); *see also, Roe v. Flores-Ortega*, 528 U.S. 470, 477, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000) ("We have long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable."). Thus, such an omission, if proven, constitutes constitutionally deficient performance, as a matter of law. Additionally, it is clear that "to satisfy the prejudice prong of the *Strickland* test, a defendant who shows that his attorney ignored his wishes and failed to appeal his

case need only demonstrate that, but for the attorney's deficient performance, he would have appealed." *Gomez-Diaz*, 433 F.3d at 792. In other words, to establish prejudice arising from counsel's failure to appeal when instructed to do so, a defendant need merely show "a reasonable probability that he would have appealed without regard to the putative merits of such appeal." *Thompson*, 504 F. 3d at 1208.

Accordingly, the Court must determine if Hernandez specifically instructed counsel to appeal. The only evidence in support of Hernandez's claim comes from the allegations contained in the petition. Turning to the allegations, Hernandez surely expressed a desire to appeal. However, he clearly indicates that his counsel attempted, multiple times, to explain why he should not appeal. Unmistakably missing from those allegations, however, is the claim that following the discussions he specifically requested or instructed counsel to file an appeal. Rather, the record reflects that Hernandez ultimately filed a Notice of Non-Appeal following his sentencing. (Doc. 42). This is insufficient to meet the *per se* standard of *Flores-Ortega*. *Flores-Ortega*, 528 U.S. at 478 ("[C]ounsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal.").

Given Hernandez's known interest in filing an appeal, however, counsel is constitutionally obligated to consult with Hernandez about an appeal. Counsel is required to consult with a defendant about an appeal if "there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably

demonstrated to counsel that he was interested in appealing." *Id*. at 480. "Consulting" necessitates that counsel "advis[e] the defendant about the advantages and disadvantages of taking an appeal, and mak[e] a reasonable effort to discover the defendant's wishes." *Id*. at 478-480. The facts of record indicate that counsel, in fact, did consult with Hernandez about the advantages and disadvantages of filing an appeal, namely the benefit of accepting the plea deal (including its waiver of rights) and receiving a prison sentence 50 months less than the statutory minimum and having pending federal drug charges from Georgia dismissed. After that discussion, Hernandez executed the Notice of Non-Appeal. There are simply no facts to suggest that a rational defendant would want to challenge this imposed sentence and Hernandez provides none.

Accordingly, the Court finds that Hernandez has not demonstrated that his plea was involuntary, that he instructed counsel to file an appeal, or that counsel failed to consult with him about filing an appeal. For these reasons, Hernandez's ineffective assistance claim lacks merit and relief is denied.

### B.       Counsel's performance prior to entry of plea

Hernandez's remaining ineffective assistance claims relate to counsel's performance prior to the entry of his plea of guilty, including: (1) counsel worked with government instead of defending him; (2) counsel failed to argue the unconstitutionality of the search and seizure; and (3) counsel failed to argue harassment and racial profiling of the traffic stop. The United States argues, and the

Court agrees, that these claims are waived as a result of Hernandez's valid guilty plea and that Hernandez makes no allegation that but for the supposed errors he would not have pleaded guilty and would have opted for trial.

The two-prong *Strickland* test, previously discussed, is used to analyze ineffective assistance claims that arise out of the plea process. *Hill v. Lockhart*, 474 U.S. 52, 57, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985). With such a claim, the first prong remains the same – counsel's conduct must be objectively reasonable. *Id*. at 58. However, in the case where a defendant pleads guilty, "counsel owes a lesser duty to a client than to one who decides to go to trial . . . [and] need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between entering a guilty plea and going to trial." *Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984) (citation omitted). "To impart such an understanding to the accused, counsel must, after making an independent examination of the facts, circumstances, pleadings and laws involved, offer his informed opinion as to the best course to be followed in protecting the interests of his client." *Id*. *Strickland's* second prong requires that petitioner establish prejudice to state a claim. Accordingly, a petitioner claiming ineffective assistance during the plea process must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty. *Hill*, 474 U.S. at 59. This can best be evaluated by determining if petitioner had an available defense that would have been successful at trial. *Id*.

**1.      Counsel called him "garbage" and "pressed" him to admit guilt.**

Hernandez alleges, though without sufficient clarity, that counsel inadequately defended him by pressuring him to plead guilty and cooperate with the Government;[4] specifically, Hernandez claims: (1) counsel had him write a narrative statement of the incident, (2) an investigator recorded him during an interview without authorization, (3) after refusing to accept responsibility for the charges, "they were bothering with Mr. Hernandez, and threatened him to give a long sentence if he didn't accept his guilty", and (4) after he pleaded guilty, counsel called him "garbage" and "pressed" him to give information regarding his coconspirators.  Such allegations are conclusory and fall substantially short of establishing that counsel's representation fell below an objective standard of reasonableness and that but for counsel's conduct, the result of the proceedings would have been different. *Strickland*, 466 U.S. 688.  "[A] choice between going to trial and risking a longer prison sentence or taking a plea and accepting a shorter sentence does not amount to constitutionally impermissible coercion."  *See Brady v. United States*, 397 U.S. 742, 75, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970) (A guilty plea is constitutionally valid even if "motivated by the defendant's desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to conviction and a higher penalty authorized by law for the crime charged.").

---

[4]      To the extent Hernandez questions the non-adversarial nature of his proceedings, Hernandez loses sight that his plea was negotiated pursuant to Fed. R. Crim. P. Rule 11 and that he agreed to the sentence and conditions.  (*See* Doc. 36).  Again, Hernandez has not overcome the presumption that he entered his plea knowingly based on the statements given at the plea colloquy.

Review of the record reflects that the United States was fully prepared to prosecute Hernandez and introduce the following evidence at trial: facts of traffic stop and search of vehicle,[5] expert testimony of DEA Agent Krawczyk,[6] and 404(b) evidence of pending drug charges in Georgia.[7] Hernandez faced a mandatory minimum prison sentence of ten years, to life, for the charges related to this habeas petition, as well as imprisonment for two pending drug offenses in Georgia. Accordingly, it was objectively reasonable for counsel to advise acceptance of a plea deal promising the dismissal of the Georgia charges and recommendation of the

---

[5]     Alabama State Trooper Bennett initiated a lawful traffic stop after observing Hernandez's vehicle traveling too closely behind a commercial vehicle on I-65 South. (Doc. 39 at 3). Hernandez was the sole occupant of the car. (*Id*.). Hernandez informed Trooper Bennett that he was not the owner of the vehicle he was driving, he was only able to provide the nickname of the vehicle's owner, and further explained he was traveling to meet friends in Mobile, AL but was unable to elaborate on from where he was coming or the specific location of where he was going. (*Id*. at 4). In his experience, Trooper Bennett "believed that some type of criminal behavior was afoot" and asked Hernandez for consent to search the vehicle. (*Id*.). Hernandez gave verbal and written consent for the search. (*Id*). In a 12 pack of Coca-Cola box, Trooper Bennett found a wooden box that was wrapped in cellophane; inside the wooden box was a clear Ziploc bag containing 478.5 grams of methamphetamine. (*Id*.).

[6]     The United States provided notice of its intent to call Special Agent Darren Krawczyk to testify to the common practices and methods regarding the purchase, transportation and distribution of methamphetamine based on his training and experience. (Doc. 25). According to Krawczyk, the amount of narcotics seized from Hernandez's vehicle was a quantity for distribution. (*Id*. at 4). Furthermore, the testimony would show that the facts of Hernandez's case matched common methods of transport of drug trafficking organizations, specifically that of methamphetamine made in Mexico and brought into the United States. (*Id*. at 4-6).

[7]     The United States was prepared to introduce 404(b) evidence at trial that Hernandez had a two-count indictment and arrest warrant pending against him in Georgia for possession and intent to distribute cocaine and conspiracy to distribute cocaine, where his coconspirator pleaded guilty to both charges. (Doc. 24).

minimum prison sentence versus going to trial given the evidence against Hernandez. It was also reasonable for counsel to encourage Hernandez to cooperate with the Government (by providing information of coconspirators) following the entry of the plea, given that this assistance led to the Government's recommendation of a sentence below the statutory minimum (70 months versus 120 months). Consequently, there is simply no factual basis for this Court to surmise, much less find, that no competent attorney would have acted (or omitted to act) in the same manner as counsel in this case. "When a defendant pleads guilty relying upon his counsel's best professional judgment, he cannot later argue that his plea was due to coercion by counsel." *United States v. Lagrone*, 727 F.2d 1037, 1038 (11th Cir. 1984).

As discussed previously, the record confirms that Hernandez's plea was voluntary. *See Boykin v. Alabama*, 395 U.S. 238, 242-43, 89 S. Ct. 1709, 1711-12, 23 L. Ed. 2d 274 (1969). A "defendant's plea of guilty, made knowingly, voluntarily, and with the benefit of competent counsel, waives all *nonjurisdictional* defects in that defendant's court proceedings." *United States v. Yunis*, 723 F.2d 795, 796 (11th Cir.1984). (emphasis in original). This includes any claim of ineffective assistance of counsel unless the deficient performance relates to the voluntariness of the plea itself. *See, e.g., Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992) (In finding a waived claim of pre-plea ineffective assistance of counsel, the Eleventh Circuit noted that the claim was not about the defendant's decision to plead guilty and that "[a] defendant who enters a plea of guilty waives all non-jurisdictional challenges to the constitutionality of the conviction, and only an attack on the voluntary and

knowing nature of the plea can be sustained."); *Duhart v. United States*, 556 F. App'x 897, 898 (11th Cir. Feb. 28, 2014) (implicitly confirming that a defendant can waive pre-plea ineffective assistance of counsel claims that do not "go to the knowing and voluntary nature of the plea[]"), *cert. denied*, ___ U.S. ___, 135 S. Ct. 1475, 191 L. Ed. 2d 418 (2015). Hernandez specifically denies coercion or being pressured into acceptance of guilt in his open court plea colloquy and further affirms the satisfactory representation of trial counsel.

> "[D]ispositions by guilty plea are accorded a great measure of finality." *Blackledge v. Allison*, 431 U.S. 63, 71, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977). Recognizing that a prisoner often "has everything to gain and nothing to lose from filing a collateral attack upon his guilty plea", courts accord great deference to a defendant's statements during a plea colloquy and are reluctant to allow a defendant to go behind his own sworn testimony. *Id.*
>
>> [T]he representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.
>
> *Id.* at 73-74 (citations omitted). "The plea process brings to the criminal justice system a stability and a certainty that must not be undermined by the prospect of collateral challenges in cases not only where witnesses and evidence have disappeared, but also in cases where witnesses and evidence were not presented in the first place." *Premo v. Moore*, 562 U.S. 115, 132, 131 S. Ct. 733, 178 L. Ed. 2d 649 (2011).

*Denne v. Jones*, 2018 U.S. Dist. LEXIS 219542, *20-21 (N.D. Fla., Dec. 17., 2018).

Additionally, to establish his ineffective assistance claim, Hernandez must, but has failed to, show that he would not have pleaded guilty and would have gone to trial but for the alleged errors. *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L.Ed.2d 203 (1985); *but compare Davis v. United States*, 335 F. App'x 825, 827 (11th Cir. Jun. 9, 2009) ("If the movant (1) failed to allege in his motion to vacate that, but for counsel's advice, he would not have pled as he did or (2) otherwise failed to show special circumstances indicating that counsel's advice affected his decision to plead, then his allegation of prejudice is insufficient to satisfy *Strickland*.") *with Bohannon v. United States*, 2010 U.S. Dist. LEXIS 17570, 2010 WL 749329, *4 (S.D. Ala. Feb. 26, 2010) ("Nor can the petitioner satisfy the prejudice prong of his ineffective assistance claim. As a threshold matter, he has failed to even *allege* prejudice, and such a failure is independently fatal.") (emphasis in original). Accordingly, Hernandez has failed to establish that counsel's performance fell below an objective standard of reasonableness, that his plea was involuntary, and has further failed to show (or allege) that he was prejudiced by counsel's performance or the execution of the plea deal. Consequently, Hernandez's claims fail and § 2255 relief is denied.

## 2. Counsel failed to argue lack of probable cause for search of vehicle

In his petition, Hernandez claims trial counsel rendered ineffective assistance when he failed to challenge the constitutionality of the traffic stop and search of Hernandez's vehicle which led to the arrest and conviction subject of this petition. Hernandez argues that the arresting officer failed to inform him of why his vehicle

was stopped, failed to inform Hernandez that he was free to leave the scene, that the search lacked probable cause or suspicion, and that the duration of the traffic stop was too long. The Court finds these conclusory claims are contrary to the record and meritless.

First, Hernandez's claim fails because it is forfeited due to the entry of the knowing and voluntary guilty plea. By entering into the negotiated plea agreement, the petitioner "was telling his lawyer not to conduct any further investigation and not present at a pre-trial or trial proceeding any legal defenses that he may be entitled to as it relates to his case." *Jaimes-Santibanez v. United States*, 2011 U.S. Dist. LEXIS (S.D. Fla., Jan. 4, 2011).

Second, Hernandez's arguments that the stop and search of his vehicle were illegal are meritless. The factual resume attached the Hernandez's Plea Agreement states:

> On Tuesday, January 10, 2017, Alabama State Trooper Joseph Bennett observed a gray Jeep SUV following too close behind a commercial vehicle on I-65 southbound in Baldwin County, Alabama. Trooper Bennett maneuvered behind the SUV and lawfully initiated a traffic stop. Trooper Bennett approached the SUV on the passenger side and identified the driver and sole occupant as ARTURO HERNANDEZ-ESQUIVEL. During the stop, ARTURO HERNANDEZ-ESQUIVEL gave valid consent to search of the vehicle. Law enforcement officials lawfully searched the vehicle and found approximately 478.5 grams of methamphetamine (actual) concealed in the vehicle. ARTURO HERNANDEZ-ESQUIVEL knowingly possessed the methamphetamine with the intent to distribute it.

(Doc. 36 at 16). The Pre-Sentence Investigation Report further states:

During the [traffic] stop, Hernandez-Esquivel advised that he was traveling from Georgia to Mobile to see friends. However, he could not provide Trooper Bennett with his friend's last name or an address to where he was traveling in Mobile. Trooper Bennett asked Hernandez-Esquivel if the SUV was his and he stated, "No, it belongs to a friend." Trooper Bennett then asked him the vehicle owner's name and he could only give a nickname, which could not be understood by Trooper Bennett.

Based upon Trooper Bennett's training and experience, Trooper Bennett believed that some type of criminal behavior was afoot. Hernandez-Esquivel did not know the name of the owner of the SUV; his travel plans were inconsistent with normal behavior, as reasonable citizens know who they are traveling to see; and he would not elaborate on where he was coming from nor the location in Mobile he was meeting his friends. It should be noted that the officers spoke English, and the defendant speaks very little English, which made it difficult for him to communicate with the officers.

Trooper Bennett took that into account and asked Hernandez-Esquivel for consent to search the vehicle, and Hernandez-Esquivel gave verbal and written consent to search the vehicle. Trooper Bennett and Corporal Byrd searched the SUV and noted a 12-pack of Coca-Cola in the passenger area of the vehicle. Upon opening the Coca-Cola 12-pack, Corporal Byrd removed a few of the Coca-Cola cans and observed a wooden box, which was wrapped in green plastic cellophane. Corporal Byrd removed the box, removed the green plastic wrap, and opened the box. Inside the wooden box was a clear Ziploc plastic bag containing 478.5 grams of methamphetamine (actual). Hernandez-Esquivel was then placed under arrest for trafficking methamphetamine and handcuffed in Trooper Bennett's patrol vehicle.

(Doc. 39 at 3-4). From the descriptions of the traffic stop, it does not appear that a motion to suppress, challenging the legality of the stop, would have been successful. *See Turner v. Warden Coleman*, FCI, 709 F.3d 1328, 1336 (11th Cir. 2013) ("[F]actual assertions contained in a PSR, [] are deemed admitted and may be relied upon in making [factual findings]."); *United States v. Wade*, 458 F.3d 1273, 1277 (11th Cir. 2006) ("It is the law of this circuit that a failure to object to allegations of fact in a PS[R] admits those facts for sentencing purposes.").

Hernandez admits that the officer who stopped his vehicle, told him it was because "he committed an infraction." (*See* Doc. 46-1 at 4). Trooper Bennett details that he stopped Hernandez for a traffic violation, following too closely behind a commercial vehicle. Unquestionably, "following too closely" is a valid traffic violation in Alabama, *see* CODE OF ALA. § 32-5A-89, and Hernandez has made no showing that he was not following too closely behind another vehicle. Accordingly, Trooper Bennett's statement is uncontradicted and supports probable cause to stop Hernandez on the basis of a traffic violation.[8]

Hernandez next challenges the voluntariness of his consent and the existence of probable cause to search his vehicle. "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" is protected by the Fourth Amendment. U.S. Const. amend. IV. Searches conducted without warrants are *per se* unreasonable and subject to a few specific exceptions. *Coolidge v. New Hampshire*, 403 U.S. 443, 454-455, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971). One such exception is that a search is conducted pursuant to voluntary consent. *United States v. Garcia*, 890 F.2d 355, 360 (11 h Cir. 1989). "[F]or consent to a search to be deemed voluntary, it must be the product of an essentially free and

---

[8]     Hernandez also argues that the duration of the traffic stop was too long. "However, a traffic stop may last longer than the purpose of the stop would ordinarily permit if an officer, based on specific facts and rational inferences drawn from those facts in light of his training and experience, has an objectively reasonable and articulable suspicion that illegal activity has occurred or is occurring." *United States v. DeJesus*, 435 F. App'x 895, 900 (11th Cir. 2011) (per curiam) (citation omitted). As discussed, herein, Trooper Bennett had suspicion based on his experience as a law enforcement officer that criminal activity was afoot given Hernandez's unresponsive answers to his general questions during the traffic stop.

unconstrained choice." *Id*. at 360. The government bears the burden of showing the consent given was voluntary. *Florida v. Royer*, 460 U.S. 491, 497, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983). Both Hernandez and Trooper Bennett acknowledge the issue of a language barrier making communication difficult – that is that Hernandez spoke Spanish and very little English and Trooper Bennett spoke English. Hernandez claims Trooper Bennett "never clarified the statements that petitioner didn't understand in the form that he gave to him[, and the officer] never told petitioner that he could refuse [the search]." (Doc. 46-1 at 5). Trooper Bennett, however, describes in the PSR that he took the language barrier into account in obtaining verbal and written consent. (Doc. 39 at 3-4). Noticeably, Hernandez does not dispute that he gave valid verbal consent, [9] *see United States v. Verduzco*, No. 92-1963, 1993 U.S. App. LEXIS 14972 (7th Cir. June 18, 1993) ("A defendant does not have to have perfect command of the English language in order to give voluntary consent; it is enough that he understood English well enough to comprehend the situation."); *United States v. Corral*, 899 F.2d 991 (10th Cir. 1990) (Spanish speaking defendant was found to have given valid consent to search vehicle to English speaking officer where defendant had a working knowledge of English); *United States v. Leiva*, 26 F. Supp. 3d 811 (C.D. Ill. 2014) (despite language barrier, based on the facts, defendant at a traffic stop would have understood that the officer was asking for consent to

---

[9] It is also reasonable to assume that Hernandez had a decent understanding of the English language, even if he is incapable of reading or writing it since he had been living in the United States for approximately 18 years prior to his arrest. (See PSR detailing that Hernandez entered the United States from Mexico in 1999 on a U.S. Work Visa (Doc. 39 at 8)).

search the vehicle); instead, he merely challenges that the officer "never clarified the statements that petitioner didn't understand in the form that he gave to him." (Doc. 46-1 at 5). While the petition is void of what "statements" on the form he did not understand, it does maintain that Hernandez understood the officer and comprehended that Trooper Bennett stopped him "for an infraction" and intended "to give him a warning." (Doc. 46-1 at 4-6). This exhibits that Hernandez is capable of communicating (to some extent) in English. Consequently, it appears from the petition that Hernandez is mostly challenging that he did not understand that he could refuse consent to the search of his vehicle. This argument, however, is insufficient to establish involuntary consent, as the Supreme Court has held that an officer is not required to inform suspect during a vehicle stop that he is free to leave before obtaining a valid consent to search the vehicle. *Ohio v. Robinette*, 519 U.S. 33, 40, 117 S. Ct. 417, 136 L. Ed. 2d 347 (1996). The petition is void of allegations and the record of indications that the officer used coercive police procedures, threats, or intimidation used to compel consent; rather, the totality of the circumstances from the facts of record reflects that Hernandez's consent to search was voluntary. *United States v. Purcell*, 236 F.3d 1274, 1281 (11th Cir. 2001) (no indication of nonvoluntary consent where officers did not "threaten force or violence", "intimidate" and were not "verbally abusive"). Taking Trooper Bennett's statement that he knowingly "took into account" the language barrier when obtaining consent and the lack of facts provided to the contrary, the Court finds that Hernandez provided voluntary consent for the search.

Furthermore, the record supports that the warrantless vehicle search was legal because it was supported by probable cause. *See United States v. Lindsey*, 482 F.3d 1285, 1291 (11th Cir. 2007) ("Probable cause, in turn, exists when under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in the vehicle.") (internal quotation omitted). "Under the automobile exception, agents may conduct a warrantless search of a vehicle if (1) the vehicle is readily mobile (i.e.), operational; and (2) agents have probable cause to believe the vehicle contains contraband or evidence of a crime." *United States v. Tamari*, 454 F.3d 1259, 1261 (11th Cir. 2006). Probable cause to search the vehicle exists "when the facts and circumstances would lead a reasonably prudent [person] to believe that the vehicle contains contraband." *United States v. Alexander*, 835 F.2d 1406, 1409 (11th Cir. 1988) (alteration in original) (internal citation omitted). The record evidences that the totality of facts corresponded with known behaviors and trafficking methods of drug transport based on Trooper Bennett's expertise and training, thus, providing articulatable suspicion of illegal activity and probable cause to search Hernandez's vehicle. *Accord. United States v. Howard*, 991 F.2d 195, 201-202 (5th Cir. 1993) (probable cause to search vehicle gained by all facts known to officer, including defendant's lies about ownership of the vehicle in question).

Consequently, the record evidences a legal traffic stop and Fourth Amendment search of the vehicle, counsel is not constitutionally deficient for failing to preserve or argue a meritless claim. *Denson v. United States*, 804 F.3d 1339, 1342 (11th Cir.

2015) (citing *Freeman v. Attorney General, Florida*, 536 F.3d 1225, 1233 (11th Cir. 2008)).  Accordingly, Hernandez is not entitled to § 2255 relief.

### 3.  Counsel ignored comments regarding the traffic stop

In conjunction with the claims previously asserted, Hernandez further challenges that his counsel failed to argue that the traffic stop was based on racial profiling and that Hernandez was harassed during the stop, despite that Hernandez told his counsel: (1) that he was not informed about the right to refuse the search and seizure, (2) that after drugs were found in vehicle, police officers attempted to take photographs of him with their cell phones (which he refused and "told the police . . . [that] they were violating his rights"); and (3) that a police officer pointed a gun at his head and invited him to fight. (Doc. 46-1 at 14).  In assessing counsel's performance with respect to his decision not to present the stated arguments, the Court must determine whether the decision was objectively reasonable.  In other words, could the decision be construed as sound trial strategy.  If the decision was strategic and informed, it must be decided if it rendered the proceedings unfair.

Any argument that the traffic stop was based on racial profiling is belied by the record which evidences a valid stop and search, and generally, the Fourth Amendment does not require that a driver be told he is "free to go" for consent to be voluntary.  *Ohio v. Robinette*, 519 U.S. at 35.  Accordingly, it was reasonable for counsel not to raise such arguments, and counsel cannot be found ineffective for failing to raise meritless arguments.  *Ogle v. Johnson*, 696 F.Supp. 2d 1345, 1366-67

(S.D. Ga. 2009) (citing *Diaz v. Sec'y for the Dep't of Corr.*, 402 F.3d 1136, 1142 (11th Cir. 2005)).

The Court finds Hernandez's final claims of harassment following the seizure of drugs from his vehicle are insufficient to establish a Sixth Amendment claim of ineffective counsel. Notably, Hernandez's allegations involve police conduct subsequent to the lawful traffic stop, lawful vehicle search, and lawful drug seizure. The alleged misconduct, occurring after the drugs were found in his vehicle, is thereby irrelevant to the validity of his conviction and sentence. It is, thus, objectively reasonable for counsel not to present such arguments, and it cannot be said that counsel rendered ineffective assistance. Additionally, when Hernandez entered a plea of guilty, he knowingly and voluntarily admitted his guilt and has failed to demonstrate that trial counsel's performance rendered that admission of guilt involuntary or uninformed. Consequently, Hernandez forfeited his claim regarding his counsel's investigation of the evidence by his knowing and voluntary plea. *Tollett v. Henderson,* 411 U.S. 258, 93 S. Ct. 1602, 36 L. Ed. 2d 235 (1973) (A valid "guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.").

Accordingly, Hernandez has failed to establish that relief is warranted pursuant to § 2255.

## IV.    Certificate of Appealabilty

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the undersigned recommends that a certificate of appealability in this case be denied. 18 U.S.C. foll. § 2255, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1).  A certificate of appealability may only issue where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Where, as here, the district court "has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000). *See also Miller-El*, 537 U.S. at 336 ("Under the controlling standard, a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." (citations omitted and punctuation modified)).).  "A prisoner seeking a COA must prove something more than the absence of frivolity or the existence of mere good faith on his or her part." *Miller-El*, 537 U.S. at 338 (quotations omitted).  Upon consideration, the undersigned **RECOMMENDS**

that a certificate of appealability in this action be **DENIED**. Hernandez has not made a substantial showing of the denial of a constitutional right, and he has presented no constitutional claim for which "reasonable jurists would find [this] court's assessment...debatable or wrong." *Slack*, 529 U.S. at 484.

## V.    Appeal *In Forma Pauperis*

"An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith." 28 U.S.C.A. § 1915(a)(3).  A district court's finding "that an appeal would not be in good faith because no certificate of appealability had been issued . . . is not enough to explain why the appeal on the merits would not be in good faith, because the standard governing the issuance of a certificate of appealability is not the same as the standard for determining whether an appeal is in good faith. It is more demanding . . . [T]o determine that an appeal is in good faith, a court need only find that a reasonable person could suppose that the appeal has some merit." *Walker v. O'Brien*, 216 F.3d 626, 631-32 (7th Cir. 2000). *See also Weaver v. Patterson*, Civ. A. No. 11-00152-WS-N, 2012 U.S. Dist. LEXIS 92119, 2012 WL 2568218, at *7 (S.D. Ala. June 19, 2012) (Nelson, M.J.), *report and recommendation adopted*, Civ. A. No. 11-00152-WS-N, 2012 U.S. Dist. LEXIS 92115, 2012 WL 2568093 (S.D. Ala. July 3, 2012) (Steele, C.J.) ("An appeal may not be taken *in forma pauperis* if the trial court certifies in writing that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); *see* Fed. R. App. P. 24(a)(3)(A); *Lee v. Clinton*, 209 F.3d 1025, 1026 (7th Cir. 2000) (concluding that 'good faith' is 'an objective concept' and that 'not taken in good faith' is 'a synonym for frivolous'); *DeSantis v. United*

*Techs. Corp.*, 15 F. Supp. 2d 1285, 1288-89 (M.D. Fla. 1998) (stating that good faith 'must be judged by an objective, not a subjective, standard' and that an appellant 'demonstrates good faith when he seeks appellate review of any issue that is not frivolous'). An appeal filed *in forma pauperis* is frivolous if 'it appears that the Plaintiff has little to no chance of success,' meaning that the 'factual allegations are clearly baseless or that the legal theories are indisputably meritless.' *Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993)."). *But see, e.g., United States v. McCray*, No. 4:07CR20-RH, 2012 U.S. Dist. LEXIS 48199, 2012 WL 1155471, at *2 (N.D. Fla. Apr. 5, 2012) ("Because the defendant has not obtained—and is not entitled to—a certificate of appealability, any appeal by the defendant will not be taken in good faith. I certify under Federal Rule of Appellate Procedure 24(a) that any appeal will not be taken in good faith and that the defendant is not otherwise entitled to proceed *in forma pauperis* on appeal.").

Considering the foregoing analysis, the undersigned recommends the Court certify that any appeal by Petitioner in this action would be without merit and therefore not taken in good faith and, accordingly, find that Petitioner is not entitled to appeal *in forma pauperis*.

## VI.    Conclusion

For the reasons set forth herein above, it is **RECOMMENDED** that Hernandez's § 2255 motion (Doc. 46) be **DENIED** and **DISMISSED** with prejudice.

The undersigned further **RECOMMENDS** that Petitioner be found not entitled either to a Certificate of Appealability or to proceed *in forma pauperis* on appeal.

      **DONE** this the 28th day of June 2019.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE OF RIGHT TO FILE OBJECTIONS**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Rule 8(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts; S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.